Eric B. Evans, Bar No. 232476
EEvans@perkinscoie.com
Bo Yan J. Moran, Bar No. 360289
BMoran@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone:     +1.650.838.4300
Facsimile:     +1.650.838.4350

*Attorneys for Plaintiff*
*COMEBACK MEDIA, INC.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| COMEBACK MEDIA, INC., *a Delaware Corporation,*<br><br>Plaintiff,<br><br>v.<br><br>PARTICLE MEDIA, INC. d/b/a NEWSBREAK, *a Delaware Corporation*, TOTAL IMPULSE SPORT, *a business entity of unknown organization*, and JOHN DOES 1-20, *persons of unknown citizenship,*<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Comeback Media, Inc. d/b/a Next Impulse Sports ("Plaintiff" or "Comeback") alleges the following against defendants Particle Media, Inc. d/b/a NewsBreak ("NewsBreak"), Total Impulse Sport ("Total Impulse"), and John Does 1-20 ("Doe Defendants," and collectively with Newsbreak and Total Impulse, "Defendants").

**INTRODUCTION**

1.      Comeback publishes web articles that cover the broader world of sports, beyond scores and play-by-play. Next Impulse Sports ("Next Impulse") is one of the websites Comeback owns and uses to publish these articles. Founded in 2010, Next Impulse describes its articles as "snackable – beyond the box score – sports bites" and "[c]ontent that fans share with friends." Until recently, Next Impulse was a thriving, financially successful business that gave a livelihood to several sportswriters, including Kevin Harrish, Chris Novak, and Qwame Skinner.

2.      Next Impulse made money by selling advertising on its website and by syndicating its articles on other websites and news apps, including SmartNews and MSN, which had the explicit contractual right to syndicate Next Impulse articles in full. Next Impulse did not have a direct contractual relationship with NewsBreak but because Next Impulse's articles were popular with NewsBreak users, article "snippets" (previews of Next Impulse articles) were frequently shown to NewsBreak users. While NewsBreak could not show full articles, users had the ability to click a "read full article" button that would then load the article directly from the Next Impulse site, enclosed in a frame provided by the NewsBreak app. This full article frame allowed Next Impulse to collect advertising revenue for ads shown to NewsBreak users while NewsBreak benefitted because it was able to display the Next Impulse article to its users while still showing them ads in the NewsBreak app using the framed in-app browser.

3.      Starting in January 2025, Total Impulse hijacked Next Impulse—stealing its articles, its trademark, and its main revenue stream. It was so brazen in its theft that it did not even bother to remove the authors' names from the articles it copied and republished. Adding injury to insult, it grabbed almost all of Next Impulse's NewsBreak traffic and revenue, even gaming NewsBreak's search feature so that a search for "Next Impulse Sports" returns only stolen articles from Total

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Impulse. Total Impulse's brazen theft has driven Next Impulse's revenue to near zero and puts its

2    survival in serious question.

3         4.    NewsBreak has participated in Total Impulse's open and notorious taking of Next

4    Impulse's articles, trademark, and business. Despite the red flags signaling copyright

5    infringement—stolen title, unchanged author information, references to Next Impulse in stolen

6    articles Total Impulse publishes on NewsBreak website and app—NewsBreak now pays Total

7    Impulse, the thief, money that ought by rights to go to Next Impulse and Comeback. NewsBreak's

8    cynical willingness to benefit from Total Impulse's misconduct is manifestly unfair. Both Total

9    Impulse and NewsBreak should be enjoined from plundering Next Impulse and Comeback and

10   should make them whole for what they have taken.

11                              **JURISDICTION AND VENUE**

12        5.    This Court has subject matter jurisdiction over the claims asserted in this action

13   under 28 U.S.C. § 1331 because they arise under federal law.

14        6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this judicial

15   district is where (1) NewsBreak resides, (2) a substantial part of the events or omissions Next

16   Impulse complains of occurred; and (3) NewsBreak is subject to personal jurisdiction because its

17   principal place of business is in Mountain View, California, in the County of Santa Clara.

18                              **DIVISIONAL ASSIGNMENT**

19        7.    Under Civil L.R. 3-2(c)-(d) and 3-5(b), this case is subject to district-wide

20   assignment because it is an intellectual property case.

21                                    **THE PARTIES**

22        8.    Plaintiff Comeback is a corporation organized and existing under the laws of the

23   State of Delaware with its principal place of business in Columbus, Ohio.

24        9.    Defendant NewsBreak is a corporation organized and existing under the laws of the

25   State of Delaware with its principal place of business at 800 West El Camino Real, Mountain View,

26   California, in the County of Santa Clara.

27        10.   Defendant Total Impulse is a corporation of unknown organization with an unknown

28   principal place of business.

COMPLAINT AND DEMAND FOR JURY TRIAL

11.    Defendants John Does are persons of unknown citizenship and residence that control Defendant Total Impulse. They have controlled, directed, and participated in all conduct alleged as to Total Impulse below.

## FACTUAL BACKGROUND
**Comeback Created a Family of Sports World News Websites, Including Next Impulse.**

12.    Comeback is a digital media company that publishes original articles on sports websites. It is a "friends and family" company that does not rely on institutional investors. Comeback's websites, most importantly Awful Announcing (www.awfulannouncing.com), The Comeback (www.thecomeback.com), and Next Impulse, address particular segments of the sports audience.

13.    Since 2021, Comeback has built a very successful business by having The Comeback pursue a strategy based on seeking revenue from syndication deals with news apps and websites like MSN, SmartNews, and NewsBreak. These news apps and websites aggregate articles from many news publishers into apps and websites that let users create customized newsfeeds that cover topics of interest to them. For example, a user might customize a newsfeed to include news about the town where they live and their local basketball team.

14.    Publishers like Comeback get a share of the advertising revenue derived from users' visits to their content on the news app and website or, in other cases, earn revenue from ads on their own websites because of users referred by the news app and website. Depending on how popular the publisher's articles are, that revenue can be substantial. Historically, Comeback's articles have been popular and have brought in substantial revenue, supporting a team of sportswriters.

### Next Impulse's Articles Developed an Audience and
### Made Money from Advertising and Syndication on NewsBreak and MSN

15.    Comeback acquired Next Impulse from its original creator for $10,000 and built it into a successful online property, especially after a relaunch in 2023 that focused Next Impulse on the intersection of sports, on the one hand, and politics and celebrity news on the other. Next Impulse's current website describes its articles as "snackable – beyond the box score – sports bites" and "[c]ontent that fans share with friends."

COMPLAINT AND DEMAND FOR JURY TRIAL

16.     By early 2024, Next Impulse articles were gaining traction on MSN where it had a direct contractual relationship, and NewsBreak, where it did not. Because of the lack of a direct contractual relationship, NewsBreak sent direct traffic to the site via a "read full article" button associated with its article previews that launched Next Impulse articles in an in-app framed browser. The articles received many views from users in these apps and referred by MSN and Newsbreak and, as a result, Comeback earned substantial monthly revenue from ads placed on Next Impulse articles.

17.     In November 2024, Comeback's revenue from ads shown on Next Impulse articles had risen to $250,000/month. That revenue supported a team of writers, including Kevin Harrish, Qwame Skinner, and Chris Novak, among others.

**Total Impulse Hijacked Next Impulse's Revenue, Trademark, and Articles.**
***Total Impulse Hijacked Substantially All of Next Impulse's Revenue***

18.     In January 2025, though, visits to Next Impulse began to drop, along with revenue. The dropoff accelerated dramatically in February as visits and revenue reached near zero. Comeback had no explanation for Next Impulse's sudden collapse. Multiple long term advertising partners on Next Impulse articles were at a loss too, inquiring about the dwindling traffic to the website.

19.     Then, in mid-March, Comeback discovered why Next Impulse traffic and revenue had collapsed: Total Impulse had copied its articles and trademark and were passing them off as its own. It had also hijacked the user referrals Next Impulse had received from NewsBreak by syndicating its stolen articles directly to NewsBreak.

20.     Total Impulse created an unauthorized knockoff of Next Impulse's website, populated with copies of articles written by Comeback's sportswriters. Total Impulse also induced NewsBreak to grant it "Verified Publisher" status, which reflects a formal partnership account with NewsBreak. On information and belief, NewsBreak granted Total Impulse "Verified Publisher" status before Total Impulse created any website or had any other evidence that it might be a web publisher at all. Further, on information and belief, NewsBreak had no legitimate basis for granting Total Impulse "Verified Publisher" status and did so as part of an attempt to benefit from Total

COMPLAINT AND DEMAND FOR JURY TRIAL

Impulse's misconduct. Total Impulse's website had no about page about its origin and current staff and additionally had no links to social media accounts the site had, clear red flags for any discerning ad network or syndication partner with bare minimum diligence in a verification process.

21. On information and belief, Total Impulse improperly induced NewsBreak to redirect referrals to Next Impulse articles to Total Impulse articles instead. As a result, searches for "Next Impulse" in NewsBreak's search interface returned results for Total Impulse's stolen articles. On information and belief, Total Impulse's misconduct was so brazen that NewsBreak knew or should have known that Total Impulse was behaving improperly.

22. As a result of this misconduct, Next Impulse has lost all or substantially all of its revenue derived from NewsBreak referrals as Total Impulse's verified status on NewsBreak wiped Next Impulse Sports existence in the NewsBreak content indexing system. For the months of January through April, Total Impulse's stolen articles published by NewsBreak garnered over 13,000 comments, 35,000 reactions, and over 8,000 shares on the NewsBreak platform.

23. In addition, because of Total Impulse's wrongful misrepresentation of the source of the stolen Next Impulse articles and NewsBreak's showcasing them as a verified publisher, MSN subsequently suspended its syndication to News Impulse Sports content onto their platform. In the month of January, MSN syndication from Next Impulse Sports brought in over $60,000.

24. Further, Next Impulse has suffered harm because its writing staff have resigned because of the substantial drop in revenue. Kevin Harrish, for example, has resigned to seek employment at another online sports publisher. His article regularly generated between $50,000 and $100,000 in monthly revenue for Next Impulse. Even if Total Impulse ceases its misconduct, it will require substantial time and effort for Next Impulse to rebuild its business and creative team.

### Total Impulse Steals Next Impulse's Trademark

25. Since at least as early as 2013, Comeback has continuously used its mark for Next Impulse Sports content. Next Impulse's mark is shown in Figure 1 below.

26. Total Impulse's mark is similar to Comeback's Total Impulse mark in sight, meaning, and overall visual impression. On information and belief, Total Impulse first started using

COMPLAINT AND DEMAND FOR JURY TRIAL

its infringing mark on or about January 2025. Total Impulse's infringing mark is shown in Figure 2 below.

27.     Below is a true and correct image of the original Next Impulse Sports mark (Figure 1), side-by-side with a true and correct image of the infringing Total Impulse Sport mark (Figure 2).



| Figure 1: Next Impulse mark | Figure 2: Total Impulse infringing mark |

28.     Defendants' product and services in connection with which it uses the mark are similar and related to, and overlap with, the content and services in connection with which Comeback uses its mark.

29.     The parties' respective product and services which are distributed in connection with their respective marks are advertised in the same mediums, target the same customers, and serve similar functions. Comeback has been publishing content under its mark on NewsBreak since 2013. Total Impulse started publishing its content under the infringing mark on NewsBreak in January 2025.

30.     The blatant use of a similar name (Next Impulse Sports versus Total Impulse Sport), the self-admitted copyright infringement of Next Impulse's articles, and the publication of this copied content on the same medium shows Defendants' clear intent to copy many aspects of Next Impulse's hard-earned business and goodwill, including by infringing on Next Impulse's mark.

31.     On information and belief, Defendants' use of this mark has caused confusion, mistake and/or deception in the marketplace.

32.     Defendants' wrongful conduct has caused Comeback to lose control over the reputation associated with Comeback's Next Impulse's marks.

### *Total Impulse and NewsBreak Copied Next Impulse's Articles Down to Their Titles and Author Information.*

33.     All news stories published by Comeback are original works of authorship subject to copyright protection. As the copyright owner, Comeback has the exclusive right to, *inter alia*, reproduce, distribute, display, and/or prepare derivative works based on those stories.

34.     Since January 2025, Total Impulse and Defendants willfully and intentionally stole at least 850 of Comeback's articles and republished them on NewsBreak's website and news feed.

35.     In many cases, Defendants' brazen copying involved exact copies of Next Impulse's logo, verbatim articles, integrated pictures, and integrated videos. In other cases, Total Impulse made minor changes to the wording of the articles, though its copies remained substantially similar to Next Impulse's original articles.

36.     Before filing this lawsuit, Comeback sought and received copyright registrations covering ten of these stolen articles (the "Registered Articles"). The decision dates on these registrations all precede the filing of this lawsuit. Copies of the registration certificates reflecting the decision dates are attached as **Exhibit 1 - 10** and incorporated herein.

37.     Defendants have never been licensed to use any of these ten Registered Articles, or any other articles, for any purpose.

### Copyright Infringement on Registered Article 1

38.     On February 12, 2025, Comeback published the article entitled "World reacts to terrible Taylor Swift news," referred to herein as "Registered Article 1."

39.     After Comeback published Registered Article 1, Comeback registered it with the Copyright Office on April 3, 2025 with registration number TX 9-486-041. The Certificate of Registration is attached hereto as **Exhibit 1**. A true and correct copy of Registered Article 1 is attached hereto as **Exhibit 11**.

COMPLAINT AND DEMAND FOR JURY TRIAL

40.     Defendants have never been licensed to use Registered Article 1 for any purpose.

41.     On a date after Registered Article 1 was created, but prior to the filing of this action, Defendants copied Registered Article 1 without Comeback's permission.

42.     Defendants committed copyright infringement of Registered Article 1 as evidenced by the documents attached hereto as **Exhibit 21**.

43.     The infringing copy of Registered Article 1, attached as **Exhibit 21,** is almost an exact replica of the original article, **Exhibit 11**: The title and article are verbatim and the placement of the integrated media is the same. The credited author, Kevin Harrish, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 1 to Comeback and is credited in both articles. The headlined picture of Taylor Swift is the same. The integrated SportsCenter Instagram post is the same. At the end of the article the Total Impulse article minorly diverges, stating, "The post World reacts to terrible Taylor Swift news appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 1 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 1.

44.     NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in **Exhibit 21** on NewsBreak's website and app.

45.     In **Exhibit 21**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 2</u>

46.     On January 17, 2025, Comeback published the article entitled "NFL world reacts to horrible Russel Wilson news," referred to herein as "Registered Article 2."

47.     After Comeback published Registered Article 2, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-044. The Certificate of Registration is attached hereto as **Exhibit 2**. A true and correct copy of Registered Article 2 is attached hereto as **Exhibit 12**.

48.     Defendants have never been licensed to use Registered Article 1 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

49.     On a date after Registered Article 2 was created, but prior to the filing of this action, Defendants copied Registered Article 2 without Comeback's permission.

50.     Defendants committed copyright infringement of Registered Article 2 as evidenced by the documents attached hereto as **Exhibit 22**.

51.     The infringing copy of Registered Article 2, attached here as **Exhibit 22**, is almost an exact replica of the original article, **Exhibit 12**: The title and article are verbatim and the placement of the integrated media is the same. The credited author, Qwame Skinner, was a Next Impulse employee at the time that the article was written, and is credited in both articles. The headlined picture of Russel Wilson is the same. The integrated Russel Wilson Instagram post is the same. At the end of the article the Total Impulse article minorly diverges, stating, "The post NFL world reacts to horrible Russel Wilson news appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 2 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 2.

52.     NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 22 on NewsBreak's website and app.

53.     Total Impulse published **Exhibit 22** onto NewsBreak's website and app.

54.     In **Exhibit 22**, Total Impulse is credited as "verified publisher" of the infringing article on NewsBreak.

<u>Copyright Infringement on Registered Article 3</u>

55.     On January 19, 2025, Comeback published the article entitled "Bears moving forward with Eddie George," referred to herein as "Registered Article 3." A true and correct copy of Registered Article 3 is attached hereto as **Exhibit 13**.

56.     After Comeback published Registered Article 3, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-045. The Certificate of Registration is attached hereto as **Exhibit 3**.

57.     Defendants have never been licensed to use Registered Article 3 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

58.     On a date after Registered Article 3 was created, but prior to the filing of this action, Defendants copied Registered Article 3 without Comeback's permission.

59.     Defendants committed copyright infringement of Registered Article 3 as evidenced by the documents attached hereto as **Exhibit 23**.

60.     The infringing copy of Registered Article 3, attached as **Exhibit 23**, is almost an exact replica of the original article, **Exhibit 13**: The title and article are verbatim and the placement of the integrated media is the same. The credited author, Kevin Harrish, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 3 to Comeback and is credited in both articles. The headlined picture of Eddie George is the uncropped version of the same picture Next Impulse used. At the end of the article the Total Impulse article minorly diverges, stating, "The post Bears moving forward with Eddie George appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 3 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 3.

61.     NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 23 on NewsBreak's website and app.

62.     Total Impulse published **Exhibit 23** onto NewsBreak's website and app.

63.     In **Exhibit 23**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 4</u>

64.     On January 17, 2025, Comeback published the article entitled "NFL world reacts to Tua Tagovailoa retirement decision," referred to herein as "Registered Article 4." A true and correct copy of Registered Article 4 is attached hereto as **Exhibit 14**.

65.     After Comeback published Registered Article 4, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-047. The Certificate of Registration is attached hereto as **Exhibit 4**.

66.     Defendants have never been licensed to use Registered Article 4 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

67.    On a date after Registered Article 4 was created, but prior to the filing of this action, Defendants copied Registered Article 4 without Comeback's permission.

68.    Defendants committed copyright infringement of Registered Article 4 as evidenced by the documents attached hereto as **Exhibit 24**.

69.    The infringing copy of Registered Article 4, attached as **Exhibit 24**, is almost an exact replica of the original article, **Exhibit 14**: The title and article itself are verbatim. The credited author, Chris Novak, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 4 to Comeback and is credited in both articles. The headlined picture of Tua Tagovailoa is the same. The integrated Joe Schad X post is the same. At the end of the article, the Next Impulse article states, "The post NFL world reacts to Tua Tagovailoa retirement decision appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 4 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 4.

70.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 24 on NewsBreak's website and app.

71.    Total Impulse published **Exhibit 24** onto NewsBreak's website and app.

72.    In **Exhibit 24**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

Copyright Infringement on Registered Article 5

73.    On February 12, 2025, Comeback published the article entitled "Taylor Swift, Travis Kelce to take 'a break,'" referred to herein as "Registered Article 5."

74.    After Comeback published Registered Article 5, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-050. The Certificate of Registration is attached hereto as **Exhibit 5**. A true and correct copy of Registered Article 5 is attached hereto as **Exhibit 15**.

75.    Defendants have never been licensed to use Registered Article 5 for any purpose.

-11-
COMPLAINT AND DEMAND FOR JURY TRIAL

76.    On a date after Registered Article 5 was created, but prior to the filing of this action, Defendants copied Registered Article 5 without Comeback's permission.

77.    Defendants committed copyright infringement of Registered Article 5 as evidenced by the documents attached hereto as **Exhibit 25**.

78.    The infringing copy of Registered Article 5, attached as **Exhibit 25**, is almost an exact replica of the original article, **Exhibit 15**: The title and article itself are verbatim. The credited author, Qwame Skinner, was a Next Impulse employee at the time that the article was written and is credited in both articles. The headlined picture of Taylor Swift is the same. At the end of the article, the Next Impulse article states, "The post Taylor Swift, Travis Kelse to take a 'break' appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 5 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 5.

79.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 25 on NewsBreak's website and app.

80.    Total Impulse published **Exhibit 25** onto NewsBreak's website and app.

81.    In **Exhibit 25**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 6</u>

82.    On January 17, 2025, Comeback published the article entitled "Dan Campbell calls out Commanders," referred to herein as "Registered Article 6."

83.    After Comeback published Registered Article 6, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-054. The Certificate of Registration is attached hereto as **Exhibit 6**. A true and correct copy of Registered Article 6 is attached hereto as **Exhibit 16**.

84.    Defendants have never been licensed to use Registered Article 6 for any purpose.

85.    On a date after Registered Article 6 was created, but prior to the filing of this action, Defendants copied Registered Article 6.

COMPLAINT AND DEMAND FOR JURY TRIAL

86.     On a date after Registered Article 6 was created, but prior to the filing of this action, Defendants copied Registered Article 6 without Comeback's permission.

87.     Defendants committed copyright infringement of Registered Article 6 as evidenced by the documents attached hereto as **Exhibit 26**.

88.     The infringing copy of Registered Article 6, attached as **Exhibit 26**, is almost an exact replica of the original article, **Exhibit 16**: The title and article itself are verbatim, including a misspelling of "The Lions" as "The Lons." The credited author, Qwame Skinner, was a Next Impulse employee at the time that the article was written and is credited in both articles. The headlined picture of Dan Campbell is the same. At the end of the article, the Next Impulse article states, "The post Dan Campbell calls out Commanders appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 6 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagirism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 6.

89.     NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 26 on NewsBreak's website and app.

90.     Total Impulse published **Exhibit 26** onto NewsBreak's website and app.

91.     In **Exhibit 26**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 7</u>

92.     On January 17, 2025, Comeback published the article entitled "NFL world reacts after Broncos fire coach," referred to herein as "Registered Article 7."

93.     After Comeback published Registered Article 7, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-057. The Certificate of Registration is attached hereto as **Exhibit 7**. A true and correct copy of Registered Article 7 is attached hereto as **Exhibit 17**.

94.     Defendants have never been licensed to use Registered Article 7 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

95.    On a date after Registered Article 7 was created, but prior to the filing of this action, Defendants copied Registered Article 7.

96.    On a date after Registered Article 7 was created, but prior to the filing of this action, Defendants copied Registered Article 7 without Comeback's permission.

97.    Defendants committed copyright infringement of Registered Article 7 as evidenced by the documents attached hereto as **Exhibit 27**.

98.    The infringing copy of Registered 7, attached as **Exhibit 27**, is almost an exact replica of the original article, **Exhibit 17**: The title and article itself are verbatim. The credited author, Qwame Skinner, is a Next Impulse employee, and is credited in both articles. The headlined picture of a Broncos football helmet is the same. The integrated Ian Rapoport X post is the same. At the end of the article, the Next Impulse article states, "The post NFL world reacts after Broncos fire coach appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 7 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagiarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 7.

99.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 27 on NewsBreak's website and app.

100.   Total Impulse published **Exhibit 27** onto NewsBreak's website and app.

101.   In **Exhibit 27**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 8</u>

102.   On January 20, 2025, Comeback published the article entitled "California Governor sends clear message to Donald Trump," referred to herein as "Registered Article 8."

103.   After Comeback published Registered Article 8, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-058. The Certificate of Registration is attached hereto as **Exhibit 8**. A true and correct copy of Registered Article 8 is attached hereto as **Exhibit 18**.

104.   Defendants have never been licensed to use Registered Article 8 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

105.    On a date after Registered Article 8 was created, but prior to the filing of this action, Defendants copied Registered Article 8.

106.    On a date after Registered Article 8 was created, but prior to the filing of this action, Defendants copied Registered Article 8 without Comeback's permission.

107.    Defendants committed copyright infringement of Registered Article 8 as evidenced by the documents attached hereto as **Exhibit 28**.

108.    The infringing copy of Registered Article 8, attached as **Exhibit 28**, is almost an exact replica of the original article, **Exhibit 18**: The title and article itself are verbatim. The credited author, Kevin Harrish, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 8 to Comeback and is credited in both articles. The headlined picture of Donald Trump is the same. At the end of the article, the Next Impulse article states, "The post California Governor sends clear message to Donald Trump appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 8 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 8.

109.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 28 on NewsBreak's website and app.

110.    Total Impulse published **Exhibit 28** onto NewsBreak's website and app.

111.    In **Exhibit 28**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 9</u>

112.    On January 20, 2025, Comeback published the article entitled "World reacts as Donald Trump bans transgender athletes," referred to herein as "Registered Article 9."

113.    After Comeback published Registered Article 9, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-059. The Certificate of Registration is attached hereto as **Exhibit 9**. A true and correct copy of Registered Article 9 is attached hereto as **Exhibit 19**.

COMPLAINT AND DEMAND FOR JURY TRIAL

114.    Defendants have never been licensed to use Registered Article 9 for any purpose.

115.    On a date after Registered Article 9 was created, but prior to the filing of this action, Defendants copied Registered Article 9 without Comeback's permission.

116.    Defendants committed copyright infringement of Registered Article 1 as evidenced by the documents attached hereto as **Exhibit 29**.

117.    The infringing copy of Registered Article 9, attached as **Exhibit 29**, is almost an exact replica of the original article, **Exhibit 19**: The title and article itself are verbatim. The credited author, Kevin Harrish, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 9 to Comeback and is credited in both articles. The headlined picture of Donald Trump is the same. At the end of the article, the Next Impulse article states, "The post World reacts as Donald Trump bans transgender athletes appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 9 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 9.

118.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 29 on NewsBreak's website and app.

119.    Total Impulse published **Exhibit 29** onto NewsBreak's website and app.

120.    In **Exhibit 29**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

<u>Copyright Infringement on Registered Article 10</u>

121.    On February 12, 2025, Comeback published the article entitled "'Black National Anthem' leads to outrage," referred to herein as "Registered Article 10."

122.    After Comeback published Registered Article 10, Comeback registered it with the Copyright Office on April 3, 2025, with registration number TX 9-486-061. The Certificate of Registration is attached hereto as **Exhibit 10**. A true and correct copy of Registered Article 10 is attached hereto as **Exhibit 20**.

123.    Defendants have never been licensed to use Registered Article 10 for any purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL

124.    On a date after Registered Article 10 was created, but prior to the filing of this action, Defendants copied Registered Article 10.

125.    On a date after Registered Article 10 was created, but prior to the filing of this action, Defendants copied Registered Article 10 without Comeback's permission.

126.    Defendants committed copyright infringement of Registered Article 10 as evidenced by the documents attached hereto as **Exhibit 30**.

127.    The infringing copy of Registered Article 10, attached as **Exhibit 30**, is almost an exact replica of the original article, **Exhibit 20**: The title and article itself are verbatim. The credited author, Kevin Harrish, was a Next Impulse consultant for Comeback who assigned his rights in Registered Article 10 to Comeback and is credited in both articles. The headlined picture of a group of singers is the same. The integrated FOX Sports: NFL X post is the same. At the end of the article, the Next Impulse article states, "The post World reacts as Donald Trump bans transgender athletes appeared first on Next Impulse Sports." This statement is an admission that Total Impulse copied Registered Article 10 from Next Impulse as that note is generated directly from Next Impulse Sport's direct RSS feed and is a common tactic to deter plagarism. It also serves as a red flag to NewsBreak that Total Impulse copied Registered Article 10.

128.    NewsBreak also copied Total Impulse's unauthorized copy and displayed it in the form shown in Exhibit 30 on NewsBreak's website and app.

129.    Total Impulse published **Exhibit 30** onto NewsBreak's website and app.

130.    In **Exhibit 30**, Total Impulse is credited as "verified publisher" of the infringing article on Comeback.

131.    A complete list of these Registered Articles is attached as **Exhibit 31** and incorporated herein.

**Total Impulse Admits Misconduct by Trying to Cover Up Its Hijacking**

132.    On or about April 8, Total Impulse began to purge its NewsBreak profile of articles copied from Next Impulse. Total Impulse also changed to the design of its website as part of an effort to conceal the fact that the articles published there are all or substantially all copied from Next Impulse and other websites operated by Comeback.

COMPLAINT AND DEMAND FOR JURY TRIAL

133.    Total Impulse's attempts to destroy or conceal evidence of its misconduct shows that it *knows* that it is infringing Next Impulse's trademark and copyrights and engaging in unlawful and unfair competition.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

134.    Comeback re-alleges and incorporates by reference paragraphs 1-133 above as if fully set forth herein.

135.    The Registered Articles which were published in whole or in part on NewsBreak were original, creative works and copyrightable subject matter under the laws of the United States.

136.    Comeback is the owner of valid copyrights in ten Registered Articles contained within them, and the Register of Copyrights has issued valid Certificates of Registration covering said articles.

137.    Comeback has complied in all respects with 17 U.S.C. §§ 101 *et seq.* and has secured the exclusive rights and privileges in and to the copyrights in its news articles.

138.    By its actions alleged above, Defendants infringed on Comeback's copyrights in and relating to Comeback's articles and by, *inter alia*, reproducing, distributing and publicly displaying such copyrighted work without any authorization or other permission from Comeback.

139.    Defendants' infringement of Comeback has been deliberate, willful and in utter disregard of Comeback's rights.

140.    As a direct and proximate result of Defendants' infringement, Comeback has suffered actual damages, including, but not limited to, lost profits.

141.    As a direct and proximate result of its wrongful conduct, Defendants have obtained benefits including, but not limited to, profits attributable to their infringement.

142.    Comeback is entitled to recover from Defendants the actual damages it has sustained as a result of the acts of copyright infringement alleged above in an amount to be proven at trial, as well as Defendants' profits attributable to their infringement—or, in the alternative, statutory damages of $150,000 per work infringed or $1,500,000.

**SECOND CLAIM FOR RELIEF**

**(Lanham Act Trademark Infringement)**

143.    Comeback re-alleges and incorporates by reference paragraphs 1-142 above as if fully set forth herein.

144.    Comeback created and has been continuously using its original Next Impulse logo since Next Impulse began in 2013 to identify its sports news articles and to distinguish them from those offered by others, by, among other things, prominently displaying the mark on its distributed articles and website.

145.    In addition, through Comeback's long and continuous use and promotion of its mark, the consuming public associates and identifies Comeback's Next Impulse content with the Comeback's Next Impulse mark.

146.    Defendants' unauthorized use in commerce a mark confusingly similar to Comeback's Next Impulse Mark in connection with the advertising and publishing of sports articles that are identical or nearly identical to those created by Comeback, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of Defendants' product, and is likely to cause consumers to mistakenly believe that Defendants are in fact Comeback, or that Defendants have been authorized, sponsored, approved, endorsed, or licensed by Comeback, or that Defendants are in some way affiliated with Plaintiffs or the product that Comeback offers under its Mark.

147.    Comeback has never authorized Defendants to use Next Impulse Mark.

148.    Defendants' unauthorized use of Comeback's Next Impulse logo in commerce, in connection with an almost identical or closely related sports news website that publishes on the same popular sports platform, NewsBreak, creates a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant's product with those of Comeback, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

149.    Defendants' acts complained of herein have been committed with knowledge of Total Impulse's prior rights and with the willful intent to cause confusion and trade on Comeback's

COMPLAINT AND DEMAND FOR JURY TRIAL

goodwill. Comeback has suffered, and continues to suffer, irreparable harm, for which it has no adequate remedy at law.

150.    By reason of the foregoing, Comeback is entitled to injunctive relief against Defendants, restraining further use of infringement and to recover all damages arising out of Defendants' infringing acts, including, but not limited to, Defendants' profits, Comeback's actual damages, and costs and attorneys' fees under 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

**(Unfair and Unlawful Competition Under Cal. Bus. & Prof. Code §§ 17200 et seq.)**

151.    Comeback re-alleges and incorporates by reference paragraphs 1-150 above as if fully set forth herein.

152.    The foregoing acts and conduct of Defendants constitute misappropriation, conversion, and invasion of Comeback's property rights in and to its Next Impulse mark and the Registered Articles and such acts constitute unfair competition under California Business and Professions Code § 17200 and under common law.

153.    As a direct and proximate result of Defendants' conduct, Comeback is entitled to recover all proceeds and other compensation received by Defendants arising from their unlawful misappropriation of Plaintiff's website content.

154.    As a direct and proximate result of Defendants' unfair competition, Comeback has been damaged and Defendants have been unjustly enriched, in an amount that shall be proved at trial for which damages, restitution, and/or disgorgement is appropriate.

155.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Comeback great and irreparable injury that cannot fully be compensated or measured in money. Comeback has no adequate remedy at law. Comeback is entitled to preliminary and permanent injunctions prohibiting use of Comeback's misappropriated content and further misappropriation of its content.

156.    Defendants are guilty of oppression, fraud, and/or malice, and Comeback is therefore entitled to recover, in addition to actual damages, exemplary and punitive damages from Defendants.

-20-

COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Comeback respectfully prays that:

1. Judgment be entered against Defendants on each of the above-pleaded claims;

2. Defendants and their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from further infringements and misappropriations;

3. Defendants be required to pay Comeback maximum statutory damages in the amount of $150,000 per copyrighted work infringed, or a total of $1,500,000, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c), or in the alternative, for an award of Defendants' profits gained since their first act of infringement and for compensatory damages;

4. Defendants be ordered to provide an accounting and restitution of Defendants' unlawful proceeds gained as a result of unlawfully taking Comeback's Registered Articles and other works, and damages according to proof;

5. Defendants be required to pay Comeback its damages including lost sales and Defendants' profits as provided in 15 U.S.C. § 1125;

6. Defendants be ordered to pay punitive and exemplary damages;

7. Comeback be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

8. Comeback be awarded pre- and post-judgment interest; and

9. Comeback be granted such other and further relief as the Court deems equitable and just under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Comeback Media, Inc. hereby demands a trial by a jury on all issues in its Complaint.

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Dated:  April 11, 2025

2

3                               **PERKINS COIE LLP**

4

5                              By:   */s/Eric B. Evans*

6                                      Eric B. Evans, Bar No. 232476

7

8                                      *Attorneys for Plaintiff*

9                                      *COMEBACK MEDIA, INC.*